797 So.2d 748 (2001)
Scott P. FAUST, Anthony J. Faust, Jr., et al.
v.
GREATER LAKESIDE CORP., et al.
No. 98-CA-2853.
Court of Appeal of Louisiana, Fourth Circuit.
September 12, 2001.
Rehearing Denied October 26, 2001.
*750 Paul R. Wegmann, Jerome M. Volk, Jr., DeMartini, D'Aquila & Volk, Kenner, LA, Counsel for Plaintiff/Appellant.
Kevin A. Marks, Thomas J. Smith, Galloway, Johnson, Tompkins & Burr, New Orleans, LA, Counsel for Defendant/Appellee.
Court composed of Judge MIRIAM G. WALTZER, Judge TERRI F. LOVE, Judge DAVID S. GORBATY.
*751 TERRI F. LOVE, Judge.
Plaintiffs appeal the trial court's judgment granting a Motion for Summary Judgment in favor of Defendants. We affirm the trial court's judgment and find that based upon the undisputed facts, Defendants are entitled to judgment as a matter of law. Specifically, we find that Defendants did not commit an intentional tort by allegedly failing to provide adequate security measures for Plaintiffs. Further, we find that Defendants are not vicariously liable for the intentional acts committed by their employees because the employees were not in the "course and scope"of employment at the time.

FACTS AND PROCEDURAL HISTORY
Plaintiffs, Cassandra Thomas ("Ms. Thomas") and Scott Faust ("Mr. Faust") filed a lawsuit for damages against Greater Lakeside Corporation d/b/a Lakeside Shopping Center ("Lakeside"), Causeway Associates, ABC Management Company, Vinson Guard Services, Inc., d/b/a/ Lakeside Security, Sbarro America, Inc. and Sbarro, Inc., Sbarro Café (herein collectively referred to as "Sbarro's"), Joseph Miller ("Mr. Miller"), Patrick Williams ("Mr. Williams"), Benjamin Sanders ("Mr. Sanders"), Merald Sampson ("Ms. Sampson"), CNA Insurance Companies and A,B,C Insurance Companies. Plaintiffs allege that the trial court erred in finding that their employer, Sbarro's, was not vicariously liable under the doctrine of respondeat superior for the criminal acts committed by their co-employees. Additionally, they assert that the trial court erred in finding that Sbarro's failure to provide proper security measures did not constitute an intentional tort. Finally, they allege that the trial court erred by granting the Motion for Summary Judgment.
Ms. Thomas, Ms. Sampson, Mr. Faust and Mr. Sanders worked at Sbarro's Café located in the Food Court of Lakeside Shopping Center's Mall in Metairie, Louisiana. Ms. Thomas was an Assistant Manager and Mr. Faust was a cashier. Mr. Sanders and Ms. Sampson were dishwashers. On the evening of January 11, 1994, Ms. Thomas and Mr. Faust were on duty at the restaurant. Mr. Sanders' shift had ended that evening but he continued to clean the store, under the pretense of waiting for a ride home. Ms. Sampson had also been relieved from work earlier in the evening but was still at the restaurant, purportedly helping Mr. Sanders to clean the store. At approximately 9:00 p.m., as Ms. Thomas and Mr. Faust were attempting to close the restaurant for the evening, Ms. Sampson and Mr. Sanders attacked them and robbed the store. During the attack, Ms. Sampson and Mr. Sanders stabbed and severely injured Ms. Thomas and Mr. Faust.
Shortly thereafter, Ms. Sampson and Mr. Sanders were arrested for the aforementioned crimes. Mr. Sanders pled guilty to two counts of attempted first-degree murder and three counts of armed robbery. He was sentenced to a 99 year prison sentence at Angola Penitentiary. Ms. Sampson pled guilty to two counts of armed robbery and was sentenced to 30 years at hard labor at the Louisiana State Penitentiary.
As already mentioned, not only do Plaintiffs allege that Sbarro's is vicariously liable for the actions of Ms. Sampson and Mr. Sanders, but they also argue that Sbarro's committed an intentional tort by failing to take security measures that could have prevented the crime from occurring. They allege that Sbarro's committed an intentional tort because it engaged in various actions and omissions which contributed to the events that occurred the evening of the crime. Most significantly, Plaintiffs allege that Sbarro's: (1) hired Mr. Sanders, who *752 had a criminal record and had been fired from Sbarro's once before, (2) had a policy of not performing background checks on employees who received hourly wages and (3) permitted workplace discussions regarding the perpetration of violent crimes.

STANDARD OF REVIEW
Summary judgments are reviewed on appeal de novo. Jones v. Vela's Garage & Rental, Inc., 97-2486, p. 2 (La.App. 4 Cir. 5/27/98), 717 So.2d 246, 247; Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 12 (La.7/5/94), 639 So.2d 730, 741. Thus, all this Court must do is ask itself the same questions as the trial court: is there any question of material fact, and is the mover entitled to judgment as a matter of law? Walker v. Kroop, 96-0618, p. 1 (La.App. 4 Cir. 7/24/96), 678 So.2d 580, 582.

DISCUSSION

I. Did Sbarro's commit an intentional tort?
We find that the trial court did not err in finding that Sbarro's did not commit an intentional tort and that judge Plaintiffs are thereby limited to relief in workers' compensation. In Louisiana, an employee may not sue his employer in tort for non-intentional injuries sustained during the course and scope of employment. See White v. Monsanto, 585 So.2d 1205, 1208 (La.1991); Verret v. State Farm Mut. Auto. Ins. Co., 99-1250, p. 14 (La.App. 3 Cir. 2/2/00), 759 So.2d 115, 124, writ denied, XXXX-XXXX (La.4/2/00), 760 So.2d 1159; Chase v. La. Riverboat Gaming P'ship, 31610, p. 7 (La.App. 2 Cir. 9/22/99), 747 So.2d 115, 120. Workers' compensation is the exclusive remedy for an employee unless the injury complained of resulted from an intentional tort. La. R.S. 23:1032. In regards to the definition of "intent" for the purpose of determining when an intentional tort has been committed, the Louisiana Supreme Court explained the following in Reeves v. Structural Preservation Systems, 98-1795, p. 4 (La.3/12/99) 731 So.2d 208, 211:
the meaning of "intent" in this context "is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct or (2) knows that the result is substantially certain to allow from his conduct, whatever his desire may be as to that result."
Id. at 211 (quoting Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981)). The term "substantially certain" has been subject to intense review. Jasmin v. HNV Central Riverfront Corp., 94-1497 p. 2 (La.App. 4 Cir. 8/30/94), 642 So.2d 311, 312-313; Tapia v. Schwegmann Giant Supermarkets, Inc., 590 So.2d 806, 807 (La.App. 4 Cir. 11/26/91); King v. Schuylkill Metals Corp., 581 So.2d 300, 302 (La.App. 1 Cir. 5/16/91). To meet this standard of "substantially certain," our jurisprudence requires more than a reasonable probability that an injury will occur; this term has been interpreted as being the equivalent to "inevitable," "virtually sure," and "incapable of failing." Clark v. Division Seven, Inc., 99-3079, p. 2 (La.App. 4 Cir. 12/20/00), 776 So.2d 1262, 1264, writ denied, XXXX-XXXX (La.3/16/01), 787 So.2d 318; Brown v. Diversified Hospitality Group, 600 So.2d 902, 906 (La.App. 4 Cir. 5/28/92). In this case, Plaintiffs allege that Sbarro's committed an intentional tort by failing to take security measures to protect them and failing to act upon the illicit behavior of other Sbarro's employees. In a similar case cited by Sbarro's, Adams v. Time Saver Stores, Inc., 92-1339, p. 2 (La.App. 4 Cir. 2/26/93), 615 So.2d 460, 461, an associate manager was abducted and assaulted while working the grave yard shift. She filed suit alleging that her employer committed an intentional tort for a host of acts and *753 omissions which preceded the crime. Specifically, she contended that before the assault occurred, there had been nine (9) robberies within the past five (5) years, incidents of shoplifting, simple robberies and gang fights on the store's property. Furthermore, she asserted that this situation was exacerbated by the fact that there were no security guards on the premises. Additionally, prior to the assault, she had alerted her employer that she did not want to work the particular shift that night because she was frightened. See Id.
Upon reviewing the facts of Adams, this Court upheld the trial court's decision that Defendant was entitled to judgment as a matter of law. See Id. at p. 4; 462. In affirming the trial court, we found that although terms such as "reasonably forseeable," "likely to occur" and "should have known" may raise issues of negligence, or gross negligence, they do not amount to "intentional" as that term is used in the Workers' Compensation Act. See Id at 460; Cardwell v. New Orleans Public Service., 96-0532, p. 1 (La.App. 4 Cir. 11/6/96), 683 So.2d 888, 889. We also noted that the Louisiana legislature has had ample opportunity to revisit the mechanics of the Workers' Compensation statute and subsequently provide for additional circumstances that would have enabled the plaintiff to sue her employer in tort. See Adams, 615 So.2d 460, at p. 1; 461. For example, the legislature could have amended La. R.S. 23:1032 so that in addition to being able to sue an employer for intentional torts, an employee could also sue if his employer "failed to take reasonable steps to correct or prevent a known hazard in the workplace." See Id. However, we found that since our legislature had not seen fit to modify La. R.S. 23:1032, this Court was not at liberty to subvert the clear meaning of the statute. See Id.
Similarly, we reach the same conclusion in this case. In accordance with prevailing jurisprudence, we cannot say that Sbarro's actions constituted an intentional tort. Plaintiffs' allegations are persuasive in convincing this Court that Sbarro's was negligent or even grossly negligent for failing to implement security measures and also failing to appropriately respond to Plaintiffs' concerns. Specifically, it hired Mr. Sanders without conducting a background check, when taking such a precaution would have shown that he had previously been convicted of theft and murder. Furthermore, although Ms. Thomas had reported Mr. Sanders' threats that he was going to rob the store and injure people, Sbarro's took no action to intercede. We find that Sbarro's conduct was egregious in that it fell woefully short of protecting the interests and welfare of its' employees. Nonetheless, this finding is not enough to impute intent. See Clark, 776 So.2d 1262 at p. 4; 1264. The court in Reeves explained that the employer's mere belief that something may or even probably will, eventually get hurt, if a work place practice is continued does not constitute an intentional act. See Verret, 759 So.2d 115 at 124. Instead, it may be considered negligence, which is covered by workers' compensation. See Id. Even where a defendant's conduct is grossly negligent, this fact alone will not allow the imputation of intent. See Clark, 776 So.2d 1262 at p. 4; 1264.
In order to find that Sbarro's committed an intentional tort, the underlying facts require more than a reasonable probability, even more than a high probability that an injury will occur. Blevins v. Time Saver Stores, Inc., 99-383, p. 4 (La. App. 5 Cir. 10/26/99), 746 So.2d 191, 193. Mere knowledge and appreciation of risk will not suffice. Tapia, 590 So.2d 806, at 807. So, although there may have *754 existed a high probability that a crime was going to occur at the store and Sbarro's had knowledge of this risk, this does not rise to the level of "intent" within the ambit of intentional tort law. See Blevins, 746 So.2d 191 at 193; Tapia, 590 So.2d 806 at 807. As such, we find that the trial court committed no error in finding that Sbarro's actions did not constitute an intentional tort.

II. Is Sbarro's vicariously liable for the actions of Ms. Sampson and Mr. Sanders?
Under Louisiana law, an employer is answerable for the damage occasioned by its servants in the exercise of the functions in which the servant is employed. La. Civ.Code art 2320; Timmons v. Silman, 99-3264, p. 3 (La.5/16/00), 761 So.2d 507, 510; Lamonte v. Premier Sales, Inc., 00-299, p. 9 (La.App. 5 Cir. 10/18/00), 776 So.2d 493, 498, rehearing denied, 03/05/01; Curtis v. Rome, 98-0966, p. 5 (La.App. 4 Cir. 5/5/99), 735 So.2d 822, 825, writ denied by Rambo v. Rome, 99-1617 (La.10/01/99), 748 So.2d 441; Jackson v. Ferrand, 94-1254, p. 7 (La.App. 4 Cir. 12/28/94), 658 So.2d 691, 695. Specifically, an employer is liable for its employee's intentional torts committed, if at the time, the employee was acting within the course and scope of his employment. Lee v. Delta Air Lines, Inc., 00-1034, p. 6 (La.App. 5 Cir. 1/30/01), 778 So.2d 1169, 1174; Brasseaux v. Town of Mamou, 99-1584, p. 8 (La.1/19/00), 752 So.2d 815, 821; Baumeister v. Plunkett, 95-2270, p. 3 (La.5/21/96), 673 So.2d 994, 996. An employee is acting within the course and scope of his employment when the employee's action is "of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space and is activated at least in part by a purpose to serve the employer." See Id.
It takes little analysis to determine whether Ms. Sampson and Mr. Sanders actions fall within the ambit of "intentional" for the purpose of vicarious liability. If a reasonable person must have perceived that his actions were certain to cause injurious consequences, then the tortfeasor will be treated by the law as if he intended those consequences, whether he in fact intended them or not. Fannin v. Louisiana Power & Light Co., 594 So.2d 1119, 1125 (La.App. 5 Cir. 2/18/92); Mahfouz v. J.A.C.E. Oilfield Sales & Service, Inc., 569 So.2d 1074, 1077 (La.App. 3 Cir. 11/07/90); Maddie v. Plastic Supply & Fabrication, Inc., 434 So.2d 158, 160 (La.App. 5 Cir. 3/08/83). Ms. Sampson and Mr. Sanders went into the store armed with weaponry and stabbed both Ms. Thomas and Mr. Faust, causing serious injuries. It is without doubt that during the course of the robbery and stabbing, they either desired to bring about the physical results of their actions or believed that they were substantially certain to follow from what they did. See Wilson v. Advance Paper Company, Inc., 92-0496, p. 2, (La.App. 4 Cir. 1/14/93), 612 So.2d 938, 939. There could have been no other objective in stabbing Plaintiffs other than to injure or kill them. Ergo, the facts support our finding that Ms. Sampson and Mr. Sanders acted intentionally.
Since we have determined that Ms. Sampson and Mr. Sanders acted intentionally, our inquiry now centers upon whether they were acting within the course and scope of employment at the time that the crime was committed. LeBrane v. Lewis, 292 So.2d 216, 219 (La. 1974) set forth the circumstances which must be evaluated in determining whether an employee is acting within the course and scope of employment. To assess an employer's liability, the court held that four factors must be considered:

*755 1. whether the tortious act was primarily employment rooted;
2. whether the violence was reasonably incidental to the performance of the employee's duties;
3. whether the act occurred on the employer's premises; and
4. whether it occurred during the hours of employment.
Id. at 219.
In assessing whether an employee's conduct meets the LeBrane factors, the tortious conduct must be so closely connected in time, place and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations, entirely extraneous to the employer's interest. Dunmiles v. St. Charles Parish Recreation Dept., 98-831, p. 1 (La.App. 5 Cir. 1/26/99), 726 So.2d 485, 488; Johnson v. Dufrene, 433 So.2d 1109, 1112, (La.App. 4 Cir. 5/20/83). However, an employee is not vicariously liable merely because his employee commits an intentional tort on the business premises during work hours. See Id. Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objective. Taylor v. Shoney's, Inc., 98-810, p. 1 (La.App. 5 Cir. 1/26/99), 726 So.2d 519, 520, writ denied, 99-0540, (La.4/9/99), 740 So.2d 635.
It is important to note that in analyzing the LeBrane factors, the Louisiana Supreme Court in Baumeister stated that it is not necessary that all four of these factors be met before liability is found. See Id. at 997. The particular facts of each case must be analyzed to determine whether the employee's tortious conduct falls within the course and scope of his employment. See Id.
We find that the only LeBrane factor present in this case is that the crime took place on the employer's premises. Ms. Sampson and Mr. Sanders remained at Sbarro's even after their work shifts had concluded because they were waiting until the store closed to commit the crime. Nonetheless, this sole factor is not determinative in imposing vicarious liability because as already noted, an employer will not be found vicariously liable merely because the crime occurred at the place of employment. See Dunmiles, 726 So.2d 485 at 488.
Next, we find that Ms. Sampson and Mr. Sanders did not commit the crime during their hours of employment. Ms. Sampson had worked that day but had been dismissed approximately fifteen (15) minutes before the crime occurred. Nonetheless, she still lingered there afterward under the guise of helping Mr. Sanders clean the store. Mr. Sanders had also worked that evening and too, was "off the clock" but continued to clean the store with Ms. Sampson as he allegedly waited on a ride. Therefore, the workday had ended for both Ms. Sampson and Mr. Sanders prior to the commencement of the crime. We find that although they remained on Sbarro's premises, both Ms. Sampson and Mr. Sanders did not commit the crime during the hours of employment. However, even if they had been "on the clock," an employer will not be attributed vicarious liability simply because the intentional act occurs during work hours. See Baumeister, 673 So.2d 994, at 996. In order to impose vicarious liability, the employee also needs to be acting within the ambit of his assigned duties and/or furthering his employer's objective. Felix v. Briggs of Oakwood, 99-721, p. 3 (La.App. 5 Cir. 12/15/99), 750 So.2d 1091, 1092; Scott v. Commercial Union Ins. Co., 415 So.2d 327 (La.App. 2 Cir.5/10/82).
Finally, we conclude that the act of stabbing Ms. Thomas and Mr. Faust was not primarily employment rooted nor was it *756 reasonably incidental to the performance of Ms. Sampson and Mr. Sanders' duties. See LeBrane, 292 So.2d 216, at 218. Presumably, the purpose of Sbarro's is to prepare and serve food to customers. As dishwashers, Ms. Sampson and Mr. Sanders were obligated to clean dishes and the restaurant. Thus, the violent act of stabbing Ms. Thomas and Mr. Faust was clearly unrelated to the duties imposed upon Ms. Sampson and Mr. Sanders. Furthermore, as a result of the stabbing, not only did Sbarro's suffer the loss of two injured employees, but the restaurant also suffered economic loss due to the robbery and temporary closing of the restaurant following the incident. Consequently, obviously the stabbing did not benefit and was contrary to the interests of Sbarro's. See Taylor, 726 So.2d 519, at 520.
In conclusion, considering the principles of vicarious liability relative to the facts of this case, the trial court committed no error in determining that Sbarro's was not vicariously liable for the intentional acts of Ms. Sampson and Mr. Sanders' actions. For the reasons assigned herein, we affirm the judgment of the trial court.
AFFIRMED.